UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

JIZZELL O. B.,[1]

                            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

———————————————————————

**DECISION AND ORDER**

1:23-cv-0911(JJM)

        This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final

determination of the Commissioner of Social Security that plaintiff was not entitled to

supplemental security income ("SSI") benefits. Before the court are the parties' cross-motions

for judgment on the pleadings [12, 16].[2]  The parties have consented to my jurisdiction [18].

Having reviewed their submissions [12, 16, 17], plaintiff's motion is granted and the

Commissioner's motion is denied.

### BACKGROUND

        The parties' familiarity with the 1,491-page administrative record [5, 6] is

presumed. Further, the parties have comprehensively set forth in their papers plaintiff's treatment

history and the relevant medical evidence. Accordingly, I refer only to those facts necessary to

explain my decision.

———————————————

[1]       In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]       Bracketed references are to the CM/ECF docket entries. Page references to the administrative
record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

Plaintiff received SSI benefits as a child. [5] at 22. By law, her eligibility for those benefits was reconsidered under the rules applicable to adults when she turned 18. Id. The Social Security Administration ("SSA") determined that plaintiff was no longer eligible for benefits as of September 4, 2020. Id.

An administrative hearing was held on March 15, 2022. *See* id. at 41-72 (transcript of hearing). Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Lisa Groeneveld-Meijer. *See* id. On April 19, 2022, ALJ Groeneveld-Meijer issued a decision finding plaintiff not disabled. Id. at 22-33. The Appeals Council denied plaintiff's request for review on June 27, 2023. Id. at 14-15. After considering additional medical records (id. at 73-89), the Appeals Council denied plaintiff's second request for review on September 25, 2023. Id. at 1-4. Thereafter, plaintiff initiated this action.

## ALJ GROENEVELD-MEIJER'S DECISION

On April 19, 2022, ALJ Groeneveld-Meijer issued a decision concluding that plaintiff's disability ended on September 4, 2020, and that she had not become disabled again through the date of her decision. Id. at 22-33. ALJ Groeneveld-Meijer found that plaintiff's severe impairments were intellectual disability/developmental disorder, depressive disorder, and Crohn's colitis. Id. at 24.[3] She found plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels with additional non-exertional limitations:

> "[S]he can perform work that is routine day to day with training that includes demonstration. The work should not require more than incidental interaction with the general public. The work should be performed in an environment with no more than moderate noise levels that includes ready access to a restroom."

---

[3] Plaintiff does not challenge these findings.

Id. at 27.

## OPINION AND OTHER EVIDENCE

ALJ Groeneveld-Meijer considered information from several sources: 1) plaintiff's treating providers; 2) plaintiff's testimony; and 3) prior administrative medical findings. Id. at 27-29, 31. She found that the prior administrative findings that plaintiff's medical condition was "non-severe" had "little persuasive value" Id. at 31. ALJ Groeneveld-Meijer  relied primarily upon "a commonsense reading of the medical evidence of record, as well as the testimony from the hearing". Id. She concluded that the "evidence of record in its entirety does show that while the claimant's symptoms of Crohn's were generally controlled with biologics, prior to beginning this medi[c]ation she was having flares that would result in a restriction to work that allows for ready access to a bathroom". Id.

### A.      Plaintiff's Medical Evidence

There is no medical opinion in the record during the relevant period that assesses plaintiff's functional limitations due to her Crohn's disease. Her medical records show that her Crohn's was well-controlled while she was on a medication called Remicade. [5] at 869. That medication was discontinued in September 2020 due to side effects. Id. By October 2020, plaintiff was experiencing 4-5 bowel movements per day with abdominal pain. Id. at 936. Her provider noted that it "is possible that her symptoms are active" and was noted to have "elevated inflammatory markers" in her bloodwork. Id. at 937. Her medications were adjusted. Id.

In December 2020, plaintiff was seen on an emergency basis. She was having "at least 5" bowel movements per day with diarrhea and suspected she had a "C. Difficile" infection, which she had experienced before. Id. at 1015-17. In February 2021, the C. Difficile colitis had

resolved, and her symptoms were "fairly stable and reasonable". Id. at 1012. She reported 2-3 bowel movements per day. Id. at 1011. By April 2021, she was having 5-6 bowel movements per day with bouts of episodic vomiting. Id. at 1109. She was experiencing "fecal urgency". Id. In June 2021, her provider described her Crohn's as "poorly controlled". Id. at 1126. She was experiencing nausea, vomiting, and epigastric pain. Id. She reported 2-4 bowel movements per day.

In September 2021, she reported 3-6 bowel movements per day with abdominal pain. Her provider discussed with her the "long-term implications of poorly controlled intestinal inflammation". Id. at 1136-38. In December 2021, she continued to have abdominal pain, abnormal bloodwork, and reported 3-5 bowel movements per day. Id. at 1277. She discussed starting Humira with her provider. Id. at 1279.

She started Humira in January 2022. Id. at 1341. At her February 2022 visit, she noted "considerable improvement in her bowel frequency and abdominal pain and overall feeling of well-being". Id. By June 2022, she was reporting 2-3 bowel movements per day without abdominal pain. Id. at 76. In December 2022, her provider stated her Crohn's was "in symptomatic remission". Id. at 86.

**B.     Plaintiff's Testimony**

Plaintiff testified at her March 2022 hearing. Id. at 41. The hearing took place approximately two months after she began taking Humira. She testified she was having abdominal pain. Id. at 56. She reported 3-4 bowel movements per day "for that last two weeks". Id. at 57, 60. She described some urgency and estimated that she spent "[a]t least ten minutes" each time she used the bathroom. Id.

- 4 -

Despite her symptoms, she was able to go to a gym near her house to box or work out.  Id. at 62.  She was able to shop at a store near her gym and sometimes went to her grandmother's house on weekends to go to the movies and go out to eat.  Id. at 63.  She would sometimes needf to go to the restroom during the movie.  Id. at 64.

**C.      ALJ Groeneveld-Meijer's Analysis**

ALJ Groeneveld-Meijer outlined the medical evidence concerning plaintiff's Crohn's disease during the relevant period.  Id. at 28-29.  She noted that after plaintiff changed to a medication called Humira in January 2022, she "noted considerable improvement in her bowel frequency, abdominal pain, and overall well-being."  Id.  She concluded:

> "The record overall shows that the claimant did have periods where her Crohn's was under less control and she had an increase in symptoms related to medication changes.  The range of daily activities of the claimant, however, suggests that she remained functional despite these flares.  For example, she testified that she is able to walk to the gym and then box for an hour.  Treatment notes do not indicate that she had to leave office visits in order to use the restroom.  Nor was the claimant late for any appointment, or absent for any appointment, due to a flare.  She testified that she may have to use the restroom during a movie.  The limitations identified in the residual functional capacity adequately account for the claimant's need to use the restroom."

Id. at 29.

**D.      The Parties' Arguments**

Plaintiff's first argument is that the ALJ failed to account in the RFC for the time plaintiff would be off-task to take bathroom breaks.  [12-1] at 19-23.  She argues that remand is required for the ALJ to make findings concerning the frequency and duration of bathroom breaks during the workday to determine whether that off-task time "would be too frequent to be

acceptable". Id. at 20. Such findings could affect the result of the disability determination because the vocational expert testified that "using the bathroom for about 5 minutes would be tolerated by employers but if an employee needed 3 restroom breaks lasting 10 minutes each, this would be considered an accommodation". Id. at 21. The vocational expert testified that time off task over 10% of the workday would not be tolerated by an employer. [5] at 68. Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ's failure to make any findings about the time plaintiff would have to spend using the restroom "precludes meaningful review". [12-1] at 21.

The Commissioner argues that the ALJ "determined [p]laintiff would not require additional significant time off-task". [16-1] at 6. The Commissioner points to the ALJ's analysis noting plaintiff's improvement in January 2022 after starting Humira, and her conclusion that plaintiff "remained functional despite these flares" in her condition. Id. at 6 *citing* [5] at 28-29. The Commissioner cited medical evidence in the record that supports the ALJ's determination that "the claimant's symptoms of Crohn's were generally controlled with biologics, [and only] prior to beginning the medication she was having flares that would result in a restriction to work that allows for ready access to a bathroom". *See* [16-1] at 6-7.

## ANALYSIS

### A.      Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305

U.S. 197, 229 (1938).  It is well settled that an adjudicator determining a claim for DIB and/or

SSI employs a five-step sequential process.  Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff bears the burden with respect to steps one through four, while the

Commissioner has the burden at step five.  *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir.

2012).

**B.      ALJ Groeneveld-Meijer's RFC Is Not Supported by Substantial Evidence**

I agree with plaintiff that the RFC is not supported by substantial evidence.

Accordingly, remand is required for a proper RFC analysis, and for further development of the

record, if necessary.

It is the ALJ's responsibility to "weigh all of the evidence available to make an

RFC finding that was consistent with the record as a whole".  Matta v. Astrue, 508 F. App'x 53,

56 (2d Cir. 2013) (Summary Order).  In doing so, an ALJ may not "arbitrarily substitute [his/her]

own judgment for competent medical opinion." Riccobono v. Saul, 796 F. App'x 49, 50 (2d Cir.

2020) (Summary Order).  Of course, "the ALJ's RFC conclusion need not perfectly match any

single medical opinion in the record, so long as [the conclusion] is supported by substantial

evidence." Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022).  Moreover, "[w]here . . . the

record contains sufficient evidence from which an ALJ can assess the claimant's residual

functional capacity . . .  a medical source statement or formal medical opinion is not necessarily

required". Monroe v. Commissioner of Social Security, 676 F. App'x 5, 8 (2d Cir. 2017)

(Summary Order).  *See also* Cook v. Commissioner of Social Security, 818 F. App'x 108, 109-

10 (2d Cir. 2020) (Summary Order) ("although there was no medical opinion providing the

specific restrictions reflected in the ALJ's RFC determination, such evidence is not required

when the record contains sufficient evidence from which an ALJ can assess the [claimant's]

residual functional capacity. Here, the treatment notes were in line with the ALJ's RFC determinations").

An ALJ is "duty-bound to review all of the evidence before her, resolving inconsistencies, and make a disability determination that is consistent with the evidence as a whole". Rice v. Commissioner, 2020 WL 4283894, *4 (W.D.N.Y. 2020). The ALJ is required "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached". Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020).

Plaintiff argues that ALJ Groeneveld-Meijer failed to do that here. I agree. ALJ Groeneveld-Meijer stated that, while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms", her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record". Id. at 28. While certainly "the ALJ is not obligated to accept the claimant's subjective complaints without question", "the ALJ is required to consider the claimant's subjective complaints of pain and other symptoms" in the first instance. Garrett v. Commissioner of Social Security, 2019 WL 2163699, *2 (W.D.N.Y. 2019); see 20 C.F.R. §404.1529(c)(3) ("[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms . . . [w]e will consider all of the evidence presented, including . . . your statements about your symptoms").

"If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief are legitimate and whether the

determination is supported by substantial evidence." <u>Michael K. A. v. Commissioner of Social Security</u>, 2022 WL 4226099, *5 (N.D.N.Y. 2022).

Here, ALJ Groeneveld-Meijer stated that the range of activity reported by the plaintiff "suggests that she remained functional despite" the flares of her Crohn's disease. Plaintiff was able "to walk to the gym and then box for an hour", there were no notations in her medical records that she missed appointments due to her Crohn's, and that "she may have to use the restroom during a movie". [5] at 29. However, "a claimant need not be an invalid to be found disabled under the Social Security Act". <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2d Cir. 1998); *see also* <u>Nunez v. Commissioner</u>, 164 F.4th 60, 76 (2d Cir. 2025). None of the activities identified by plaintiff are contrary to statements documented in her medical records during the relevant period that she needed to use the bathroom anywhere between 2 and 6 times per day. Gyms, doctor's offices, and movie theaters typically have bathrooms for patrons and patients to use. These activities do not call into question plaintiff's testimony that she spends <u>at least</u> 10 minutes in the bathroom each time she goes. The vocational expert testified that going to the restroom "on an unpredictable basis for ten minutes up to three times a day" would not be tolerated by employers. [5] at 68-69. She also testified that time off-task in excess of 10% of the work day would not be tolerated. <u>Id</u> at 68.

Given the vocational expert's testimony, plaintiff's medical records, the lack of any medical opinions in the record on this topic, and the lack of any evidence that contradicts the plaintiff's testimony on the duration of her bathroom usage, the ALJ had an obligation to make specific findings in order to discount this evidence:

> "[T]he lack of discussion on this subject by the ALJ precludes
> meaningful review by this Court. While the Court is able to deduce
> how the ALJ arrived at the conclusion that Plaintiff's Crohn's
> disease is stable . . . it is not clear how the ALJ arrived at the

conclusion that Plaintiff does not require more bathroom breaks than the normal person, particularly in light of Plaintiff's direct testimony on this point".

Kelly S. v. Commissioner, 643 F.Supp.3d 396, 401 (W.D.N.Y. 2022).

The Commissioner argues that the ALJ satisfied her obligation to make such a finding when she stated that plaintiff's "symptoms of Crohn's were generally controlled with biologics, [and only] prior to beginning this medication she was having flares that would result in a restriction to work that allows for ready access to the bathroom". [16-1] at 7. The Commissioner cites several medical records that demonstrate the stability of plaintiff's Crohn's disease and her good response to the Humira medication. Id. However, the records in the administrative record at pages 76, 77, 87 and 89 post-date the ALJ's decision. The remaining records cited by the Commissioner pre-date the relevant period. As outlined above, plaintiff's medical records from September 2020 through April 2022 – the relevant period at issue here – document frequent daily trips to the bathroom and poorly controlled Crohn's disease. The ALJ has not identified any evidence in the record that calls these reports into question.

For these reasons, the ALJ has failed "to construct an accurate and logical bridge between [her] recitation of the facts and the conclusions [she] reached". Lopez obo Y.T., 2020 WL 4504987 at *2. Notwithstanding the ALJ's assertion that her conclusions are "based upon a commonsense reading of the medical evidence of record, as well as the testimony from the hearing" (id. at 31), I am unable to discern the reasons for her implicit finding that the plaintiff did not need daily bathroom breaks that exceed the typical employer's tolerance for time off-task or for three or more unpredictable bathroom breaks lasting 10 minutes or more during the relevant period.

Upon remand, the ALJ shall provide more detailed analysis on this issue, develop the record if necessary, and make specific findings concerning the frequency and length of bathroom breaks the claimant required during the relevant period, supported by evidence from the record. If the ALJ finds that the plaintiff's condition improved considerably after starting the Humira medication, he or she should consider whether a closed period of disability is appropriate.

Because I am remanding this matter for further administrative proceedings, I do not reach plaintiff's remaining arguments. *See* Shaine J. v. Commissioner of Social Security, 2020 WL 68887622 at *5 (W.D.N.Y. 2020).

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [12] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and the Commissioner's motion for judgment on the pleadings [16] is denied.

**SO ORDERED**.

Dated: March 27, 2026

/s/   Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge